IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES M.H., | § | |
|       PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:21-CV-17-BK |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
|       DEFENDANT. | § | |

**MEMORANDUM OPINION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of a final decision by the Commissioner denying his application for supplemental security income ("SSI") under the Social Security Act ("the Act"). Doc. 1 at 1. Before the Court are the parties' cross-motions for summary judgment. Doc. 27; Doc. 28. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* is **DENIED**, Defendant's *Motion for Summary Judgment* is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**I. BACKGROUND**

    **A. Facts**

Plaintiff filed his application for benefits in April 2018, claiming he became disabled in October 2016. Doc. 20-1 at 60, 146-65. Plaintiff was 49 years old when he filed his application, with a general equivalency degree and past relevant work experience as a plumber and order puller. Doc. 20-1 at 20, 29-30. In terms of his relevant medical history, Plaintiff was treated on an ongoing basis, primarily for cardiac problems. As relevant here, his treating physician, Dr. Wael Abo-Auda completed a Cardiac Medical Source Statement, concluding Plaintiff (1) can

only walk one block without severe pain or having to rest; (2) can sit/stand/walk less than two hours each in an eight-hour workday; (3) can never lift more than ten pounds; (4) would need to take two unscheduled breaks during the workday; and (5) would likely be absent from work about four days per month. Doc. 20-1 at 581-84. Dr. Abo-Auda further noted Plaintiff had twice-weekly angina episodes and was incapable of even "low stress" work. Doc. 20-1 at 581-82.

### B. Administrative Proceedings

In September 2019, the administrative law judge ("ALJ") issued a decision denying Plaintiff's application. Doc. 20-1 at 57-76. The ALJ found that Plaintiff has the severe impairments of chronic heart failure and hypertension but retains the residual functional capacity ("RFC") to perform light work with some exertional limitations. Doc. 20-1 at 62-64. The ALJ also found that while Plaintiff cannot perform his past relevant work, he could perform the jobs of ticket printer and tagger, cashier II, and small products assembler. Doc. 20-1 at 69-71. Accordingly, the ALJ ruled that Plaintiff was not disabled. Doc. 20-1 at 71.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of

performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

### III. DISCUSSION

Plaintiff argues the ALJ's RFC finding is not supported by substantial evidence because he relied on his lay medical opinions in determining the limitations presented by Plaintiff's impairments. Doc. 27 at 12-19. Specifically, the ALJ rejected as unpersuasive all the record medical opinions of Dr. Abo-Auda and the two State Agency Medical Consultants ("SAMCs"). Doc. 27 at 13-15. Defendant responds that the ALJ properly complied with the recently revised regulatory framework in considering the medical opinions of record. Doc. 28 at 6-9, 11-15.

The RFC is an assessment, based upon all relevant evidence, of a claimant's ability to work, despite his impairments. 20 C.F.R. § 416.945(a). Stated differently, it is the most a claimant can do, notwithstanding his physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). Nevertheless, in *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003), the court cautioned judges against "playing doctor" and "making their own independent medical assessments." *Cf. Coats v. Colvin*, No. 3:12-CV-4968-M, 2013 WL 6052879, at *5 (N.D. Tex. Nov. 14, 2013)

(noting that an ALJ "is not playing doctor by determining which of contradictory medical opinions to credit [because] that is precisely the type of conflict he is called upon to resolve.").

### 1. Opinions of SAMCs

In the administrative proceedings, two SAMCs determined Plaintiff could perform the full range of light work. Doc. 20-1 at 35-56. The ALJ found the SAMCs' opinions were not persuasive because they did not account for evidence of Plaintiff's tenderness in her lumbar spine and hips, decreased strength and sensation in her legs, antalgic gait, and use of a cane. Doc. 20-1 at 69. Thus, the ALJ included in the RFC assessment some additional limitations relating to Plaintiff's abilities. *See* Doc. 20-1 at 68 (finding Plaintiff had the ability to stand/sit/walk for six hours in an eight-hour workday, lift and/or carry 20 pounds occasionally and ten pounds frequently, should be able to alternate sitting and standing at will without going off task or leaving the workstation, could not perform climbing activities, and had to avoid extreme temperatures).

Contrary to Plaintiff's implication, the ALJ did not err by including additional restrictions in her RFC assessment. *See Vasquez v. Comm'r of Soc. Sec.*, 7:21-CV-00028-O-BP, 2022 WL 2975471, at *5 (N.D. Tex. June 30, 2022) (Ray, J.) (finding no error where ALJ imposed more restrictions on claimant's activity than limitations determined by SAMCs), *adopted by* 2022 WL 2972240 (N.D. Tex. July 26, 2022); *Steven K. v. Kijakazi*, No. 3:20-CV-01655-G-BT, 2022 WL 1056920, at *13 (N.D. Tex. Jan. 19, 2022) (Rutherford, J.) (same); *Ernest A.J. v. Saul*, No. 1:18-CV-00194-BU, 2020 WL 6877706, at *14 (N.D. Tex. Oct. 19, 2020) (Parker, J.) (same), *adopted by* 2020 WL 6873609 (N.D. Tex. Nov. 23, 2020).

### 2. *Opinion of Dr. Abo-Auda*

Plaintiff next takes with issue with the ALJ's rejection of Dr. Abo-Auda's opinion regarding Plaintiff's restrictions.  Doc. 27 at 15-17.  Defendant responds that the ALJ did not err in rejecting Dr. Abo-Auda's findings because they were conclusory and the evidence supported the ALJ's RFC.  Doc. 28 at 13-15.

The ALJ found that Dr. Abo-Auda's opinion was

> internally inconsistent[,] as an inability to lift no amount of weight or stand, sit or walk a total of less than 2 hours each is not consistent with the New York Heart Association Classification of 2 noted on the first page of the opinion.  This opinion is not supported by Dr. Abo-Aud[o]'s own longitudinal treatment notes that consistently indicate the claimant was doing well with no complaints other than some mild shortness of breath.  The claimant did not report an increase in symptoms until the month prior to Dr. Abo-Aud[o] completing this opinion and testing at the hospital was unremarkable with a left ventricular ejection fraction in the normal range and symptoms being triggered by tobacco abuse.  Furthermore, his opinion is not consistent with the results of objective testing or with the relatively stable nature of treatment with only periodic acute increases in symptoms.

Doc. 20-1 at 68-69 (internal record citations omitted).

As an initial matter, and despite Defendant's assertion to the contrary, "check box" opinions are not precluded from consideration simply because of the nature of the form.  *See Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007) (remanding where claimant submitted physician's diagnostic checklist which indicated she was very limited in her ability to stand and walk, must be able to lie down throughout the day, and experienced severe migraine headaches; noting no contradictory medical evidence was introduced).  Nevertheless, because the applicable regulations require only that the ALJ "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [his] determination or decision," the ALJ in this case properly evaluated Dr. Abo-Auda's medical opinion.  20 C.F.R. § 416.920c(b)(2).

6

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 27, is **DENED**, Defendant's *Motion for Summary Judgment*, Doc. 28, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on September 9, 2022.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE